Jones, J.,
 

 dissenting. The crucial question is, Are nominations by direct primaries or petition for municipal officers controlled by city charters or by state law? The majority holds that such nominations are governed by the provisions of the charter and that the state law does not control. In so doing they ignore entirely the provisions of Section 7, Article Y, of the state Constitution, which was adopted in 1912 at the same time that the home rule provisions for self-government of cities were adopted. Nowhere in the home rule provisions does the term “nominations” appear. On the other hand, when the people of Ohio, in 1912, adopted the home rule provisions, they also adopted the following provisions of the Constitution: Article V, Section 7: “All nominations for * * * municipal offices shall be made at direct primary elections or by petition as provided by law.”
 

 By this provision of the Constitution the state reserves to itself the direct control over the methods of nominations, whether made by primary election or by petition. Touching this particular feature the majority-opinion cites paragraph 2 of an alleged syllabus in the
 
 *210
 
 case of
 
 Fitzgerald
 
 v.
 
 City of Cleveland,
 
 88 Ohio St., 338, 103 N. E., 512, Ann. Cas., 1915B, 106. An inspection of that case discloses that the so-called syllabus was not adopted by a majority of the court, and- cannot therefore be recognized as the law of the court under our system of jurisprudence. That case was decided on August 26, 1913, when this court was composed of but six judges; Chief Justice Nichols having been made a member of this court in the following September. The three judges who concurred in the opinion, although disagreeing among themselves, were Johnson, Wanamaker and Wilkin. The three dissenting members were Donahue, Shauck and Newman. The dissenting opinion written by Judge Donahue, and concurred in by Judges Shauck and Newman, is absolutely unanswerable, and I quote from page 393 of that opinion as follows: “This purpose of the people and of the constitutional convention found expression in Section 7 of Article Y, which provides, among other things, that ‘All nominations for elective state, district, county and
 
 municipal
 
 offices shall be made at direct primary elections or by petition as provided by law.’
 
 * *
 
 * ' The language of this amendment is so plain, positive and direct that it needs no construction. By its express terms it applies not only to the state, to districts and counties, but also to every municipality in the state, and it is not the province of a court to read into this amendment the words ‘except in cities that have adopted a charter' providing for other methods of nomination,’ no matter if the court is of the opinion that these words should have been written therein. Any refusal on the part of the court to enforce any provision of the constitution of a state, or to change or alter its plain and unambiguous terms, is a clear usurpation of authority. The constitution itself provides the means and method by which it may be amended and it is needless to say the method so provided is not by judicial construction. ’ ’
 

 
 *211
 
 If the power granted to home rule cities in respect to nominations is all-inclusive, it could as well be argued that city charters could provide that nominations for municipal officers could be made by conventions, or by some other method than by primary election or petition. In principle, this must be the legal logic of the majority from which it cannot escape and with which we disagree.
 

 I have not quoted all of the provisions of Section 7, Article Y-. That section also contains a provision that:
 

 “Direct primaries shall not be held for the nomination * * * for the officers of municipalities of less than two thousand population, unless petitioned for by a majority of the electors of such township or municipality. ’ ’
 

 By a parity of reasoning, if a city charter contravened that provision of the Constitution under the so-called implied power of self-governing cities in respect to nominations, under the principle upheld by the majority this court would be compelled to hold that the charter provisions governed and that those constitutional provisions did not. However, in 1922, five members of this court (Chief Justice Marshall and Judge Wanamaker, dissenting) held that the last-quoted provision of the section under consideration lodged the power controlling nominations in the General Assembly, the first paragraph of the syllabus reading as follows: “The power to provide for all nominations for elective municipal officers of municipalities of 2,000 population and more was delegated to and lodged in the general assembly upon the adoption of Section 7, Article V of the Constitution of Ohio adopted September 3, 1912.”
 
 State, ex rel. Conner,
 
 v.
 
 Noctor et al., Bd. of Elections,
 
 106 Ohio St., 516, 140 N. E,, 878.
 

 The case of
 
 State, ex rel. Frankenstein,
 
 v.
 
 Hillenbrand,
 
 100 Ohio St., 339, 126 N. E., 309, is referred to. That case did not decide the question here involved.
 
 *212
 
 The controlling point to which we all agreed is found in the second paragraph of the syllabus. That merely decided that the city of Cincinnati had the power to designate the term of office which the mayor should hold. The question relating to the method of nominations was not decided, nor was Article Y, Section 7 of the Constitution, alluded to. The syllabus of the case must be read and applied in the light of the peculiar facts and questions presented and considered by the court. That point has frequently been decided by this court as shown by the numerous cases cited in volume 11, Ohio Jurisprudence, page 798.
 

 The most recent decision of this court upon that feature is contained in the case of
 
 Baltimore & O. Rd. Co.
 
 v.
 
 Baillie,
 
 112 Ohio St., 567, 148 N. E., 233, the second paragraph of the syllabus reading as follows: “The syllabus of a decision of the Supreme Court of Ohio definitely states the law of Ohio with reference to the facts upon which it is predicated, and must be read in view of the facts found in such^case.” Judge Robinson’s concurrence in the later case,
 
 State, ex rel. Conner,
 
 v.
 
 Noctor, supra,
 
 clearly shows that he regarded
 
 nominations
 
 for municipal offices under the provisions of Article Y, Section 7, of our Constitution, as not falling within the category of other powers granted to charter cities under the self-government provisions of. our Constitution.
 

 It is needless to pursue this subject further except to say that when the people adopted, at the same time, home rule .provisions for the government of cities and also the provisions of Article Y, Section 7, relating to nomination of municipal officers, the Constitution retained control in the state over the power, means, and methods of nomination of municipal officers by primary election and petition; to hold otherwise, as stated by Donahue, J., in his quoted opinion, would be but a clear usurpation of authority by this court if we refuse to
 
 *213
 
 adhere to the plain and unambiguous terms of the Constitution itself. While we agree with the feature of the majority opinion relating to the remedy, we disagree with the proposition that the smaller unit — the city — can by charter assert the power to control nominations, which the state has distinctly controlled by clear constitutional and statutory provisions.
 

 Matthias, J., concurs in the dissenting opinion.